KARISH & BJORGUM, PC
Eric Bjorgum (Bar No. 198392 – *pro hac vice granted*)
119 E. Union St., Suite B
Pasadena, California 91103
Telephone:    (213) 785-8070
Facsimile:     (213) 995-5010


 Attorneys for Plaintiff BUDDY WEBSTER


## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA


| | |
|---|---|
| BUDDY WEBSTER p/k/a BUDDY BLAZE, <br><br>               Plaintiff, <br><br>        v. <br><br> DEAN GUITARS; ARMADILLO ENTERPRISES, INC.; ARMADILLO DISTRIBUTION ENTERPRISES, INC.; ESTATE OF DIMEBAG DARRELL ABBOTT, an unknown entity; GUITAR CENTER, INC., A Delaware corporation; RITA HANEY, an individual; EMOJI FAME, a New York business entity of unknown form; WAL-MART STORES, INC., a Delaware corporation; MIOP HOLDINGS, LLC dba AXE HEAVEN, a Nevada limited liability company; VINNIE PAUL ABBOTT, an individual, and DOES 7 – 10 inclusive. <br><br>               Defendants. | Case No. 8-cv-17-01795 <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> **1.  COPYRIGHT INFRINGEMENT** <br> **2.  FEDERAL UNFAIR COMPETITION (LANHAM ACT SECTION 43(A))** <br> **3.  COMMON LAW UNFAIR COMPETITION** <br> **4.  CALIFORNIA STATUTORY UNFAIR COMPETITION** <br> **5. INVASION OF PRIVACY UNDER TEXAS COMMON LAW** <br> **6.  CIVIL CONSPIRACY** <br><br> JURY TRIAL REQUESTED |

Plaintiff BUDDY WEBSTER p/k/a BUDDY BLAZE ("WEBSTER" or "Plaintiff"), by and through his counsel Karish & Bjorgum, PC, hereby respectfully submits this Second Amended Complaint and alleges against DEFENDANTS DEAN GUITARS, ARMADILLO ENTERPRISES, INC., ARMADILLO DISTRIBUTION ENTERPRISES, INC., THE ESTATE OF DIMEBAG DARRELL ABBOTT, RITA HANEY, GUITAR CENTER, INC., EMOJI FAME, MIOP HOLDINGS, LLC, VINNIE PAUL ABBOTT, WAL-MART STORES, INC. and DOES 7 – 10, inclusive, on personal knowledge as to his own actions and on information and belief as to the actions of others, as follows.  Plaintiff submits this Second Amended Complaint in accordance with Fed.R.Civ.P. 15, per agreement of the parties.

## JURISDICTION AND VENUE

1.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, state statutory law and the common law. This Court has jurisdiction over matters arising under the Copyright Act and Lanham Act pursuant to 28 U.S.C. § 1331 (federal question actions) and 28 U.S.C. § 1338 (exclusive jurisdiction over copyright actions and concurrent jurisdiction over trademark cases).  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

2.      Defendants are subject to the personal jurisdiction of this Court, as they are located in this District or have purposefully availed themselves of the privileges of doing business in this District with regard to the actions alleged herein, and such jurisdiction is reasonable. Further, this case has been transferred to this District, upon motion of several parties, following a determination that jurisdiction is reasonable here.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and following a Court order transferring this case. Further Defendants are subject to venue Court's because they are subject to the Court's personal jurisdiction.  Venue is further appropriate in this District because this is a copyright action, with venue proper here under 28 U.S.C. § 1400.

## PARTIES

4.     Plaintiff BUDDY WEBSTER p/k/a BUDDY BLAZE ("WEBSTER") is an individual residing in Grand Prairie, Texas.   WEBSTER is a well-known guitar designer and luthier who designs custom guitars for many accomplished guitarists.

5.     On information and belief, Defendant DEAN GUITARS is a business entity of unknown form with its principal place of business in Tampa, Florida.  On information and belief, Defendant DEAN GUITARS intentionally creates, copies, distributes and sells infringing products in this District, which are also shipped around the world from this District.

6.     On information and belief, Defendant ARMADILLO ENTERPRISES, INC. is a corporation with its principal place of business in Tampa, Florida.  On information and belief, Defendant ARMADILLO ENTERPRISES, INC. is a parent company of DEAN GUITARS.

7.     On information and belief, Defendant ARMADILLO DISTRIBUTION ENTERPRISES INC. is a Florida corporation with its principal place of business in Tampa, Florida.  On information and belief, Defendant ARMADILLO DISTRIBUTION ENTERPRISES, INC. is a parent company of DEAN GUITARS.

8.     DEAN GUITARS, ARMADILLO ENTERPRISES, INC. and ARMADILLO DISTRIBUTION ENTERPRISES, INC. shall be referred to collectively herein as the "DEAN ENTITIES."

9.     On information and belief, Defendant ESTATE OF DIMEBAG DARRELL ABBOTT (the "ESTATE") is a business entity of unknown form.  On information and belief, the ESTATE sells and/or licenses products that display infringing images of Plaintiff's copyrighted guitar design.

10.    Defendant RITA HANEY ("HANEY") is an individual residing in the Los Angeles area of California.  Plaintiff substitutes in HANEY for Defendant DOE 1.

11.    Defendant GUITAR CENTER, INC. ("GUITAR CENTER") is Delaware Corporation with its principal place of business in Westlake Village, California.  Plaintiff substitutes in GUITAR CENTER for Defendant DOE 2.

12.    Defendant EMOJI FAME is a business entity of unknown form, which, on information and belief, resides in Brooklyn, New York.  Plaintiff substitutes in EMOJI FAME for Defendant DOE 3.

13.    Defendant WAL-MART STORES, INC., dba Walmart ("WALMART") is an American multinational retailing business incorporated in Delaware that operates a chain of stores and sells goods online.  On information and belief, Walmart's principal place of business is in Arkansas, and it sells infringing products into this District. Defendant WALMART is substituted in for DOE 4.

14.    Defendant VINNIE PAUL ABBOTT is an individual residing in Dallas, Texas and Las Vegas, Nevada.  He is the brother of Darrell Abbott and, on information and belief, is partially responsible for licensing the Lightning Storm Graphic and has made representations that the ESTATE is authorized to license the Lightning Storm Graphic. VINNIE PAUL ABBOTT is substituted in as DOE 5.

15.    Defendant MIOP HOLDINGS, LLC dba AXE HEAVEN is a Nevada limited liability company with its principal place of business in Elk Grove, California.   MIOP HOLDINGS, LLC dba AXE HEAVEN ("MIOP/AXE HEAVEN") is substituted in as DOE 6.

16.    Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 7 through 10 inclusive, or any of them, and therefore sues these defendants, and each of them, by fictitious names.  Plaintiff will seek leave of this court to amend this complaint when the status and identities of these defendants are ascertained.

17.    Plaintiff is informed and believes, and on that basis alleges, that at all relevant times mentioned in this Complaint, Defendants were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were agents of each other and were acting within the scope and authority of that agency and with knowledge, consent and approval of one another.

## **GENERAL ALLEGATIONS**

A.    Plaintiff's Work

18.    This case centers around Plaintiff's unique guitar design, which was used by Plaintiff's friend "Dimebag" Darrell Abbott ("Abbott"), one of the most influential guitarists to arise in the last 40 years.  Abbott was tragically murdered onstage by a mentally ill fan in 2004.  Following his death, Defendants HANEY, the ESTATE and the DEAN ENTITIES have extensively profited from his legacy.

19.    A major source of those profits has been a customized guitar designed and painted by Plaintiff WEBSTER.  WEBSTER was a close friend of Abbott and a follower of Abbott's multi-platinum band Pantera, even when Pantera's audience members could be counted on one hand.  WEBSTER has never been paid anything for that design, and the exploitation of the design has become so rampant that it has negatively affected his reputation.

20.    Plaintiff WEBSTER p/k/a Buddy Blaze, is a well-known luthier and designer of custom guitars.  Guitarists who have used guitars made by Plaintiff include Vivian Campbell (of Def Leppard and formerly of Whitesnake), the entire band of country legend Lee Greenwood, Scott Patton (of Sugarland), Eddie Ojeda (of Twisted Sister), Terry Glaze (of Lord Tracy and formerly of Pantera), L.T. Smooth (Grammy nominated, Hoku Award winning guitarist),  Stig Mathisen - Guitar Chair at Musicians Institute (M.I.), Rudy Parris (country recording artist "The Voice"),  Mark Kendall (of Great White), Steve Mandile (of Six Wire band and many others), Kinley Wolfe (of Lord Tracy and formerly of The Cult), Barry Dunaway (of 38 Special and formerly of Yngwie Malmsteen band), Kent Wells (of Dolly Parton and Kenny Rogers bands), Dave Watson (of The Oakridge Boys) and many other prominent artists.

21.    WEBSTER has been a designer of guitars since the 1980's.  WEBSTER worked for major guitar brands, including Kramer Guitars as Director of Artist Relations.  He obtained considerable fame as a fairly young guitar maker, and was sought after as a designer and business collaborator throughout the 1990's.

22.    In the 1980's, WEBSTER was living in Arlington, Texas and befriended a young local guitarist named Darrell Abbott.  Abbott was incredibly talented and was a member of the band "Pantera" which later became nationally and internationally known. One of Darrell Abbott's guitars is a model made by the Dean Guitar company, known as a Dean ML, which he won in local contest.

23.    Abbott used the guitar but eventually decided to sell it.  He offered it to WEBSTER.  WEBSTER declined to buy it, explaining to his friend that he should not sell trophies.  Abbott eventually sold it to the singer of WEBSTER'S band.

24.    WEBSTER was unhappy that Abbott had sold the guitar, so WEBSTER secretly bought it back from his band's singer.  WEBSTER then modified the neck of the guitar, changed some of the hardware and stripped the paint.  WEBSTER designed a new visual look for the guitar, which featured a unique blue background with lightning emanating from the center of the guitar body, the so-called "Lightning Storm Graphic."  (The guitar as modified by Webster will be referred to herein as the "Design.")

25.    WEBSTER gave the guitar to Abbott as a present, and Abbott immediately recognized that the guitar was very easy to play and had the "heavy" but articulated tone that he had been searching for.  It became his signature guitar.  WEBSTER never intended that the guitar would be reproduced or that images of the guitar would be distributed or published.  He did not transfer the copyright in the Lightning Storm Design to Abbott.

26.    Abbott's band Pantera, which featured his brother and Defendant VINNIE PAUL ABBOTT on drums, went on to become one of the most successful heavy metal bands of the 1990's.  Pantera's songs were driven by Abbott's distorted guitar riffs, which featured a unique combination of rhythm and melody.  Pantera has sold over 9 million records.

27.    Abbott played the guitar from WEBSTER wherever possible.  It became known as the "Dean From Hell."  Abbott broke the headstock several times,

but he always had it fixed so that he could return to using the Dean From Hell.  Here is a photo of Abbott with the original Dean From Hell:



28.    An integral part of the Dean From Hell is the Lightning Storm Graphic. WEBSTER has obtained a copyright registration on the lightning storm graphic, a true and correct copy of which is attached hereto as Exhibit A.

29.    The Dean ML the Abbott won was made by the original Dean Guitar company, owned by Dean M. Zelinsky, with the guitars manufactured in Chicago.  That company eventually went into bankruptcy and was brought by the present DEAN ENTITIES.  The vast majority of the guitars at issue in this case were not manufactured in the United States and are below the quality of the original guitar played by Abbott.

30.    Eventually, Pantera broke up and the Abbott brothers started a new band called Damageplan.  Tragically, in 2004, a mentally troubled fan entered a Damageplan show with a gun and murdered Abbott on stage.  The rock world was stunned.

31.     Since Abbott's death, the DEAN ENTITIES have engaged in multiple re-issue

campaigns of the Dean From Hell.  Just prior to Abbott's death, he had returned to the fold of DEAN GUITARS, having spent some time being sponsored by another company.  A reissue of the Dean From Hell was planned before Abbott passed away.

32.     At Abbott's funeral, Dean Zelinsky (the former owner of DEAN GUITARS and an employee of the company after it was bought out of bankruptcy by Elliott Rubinson) approached WEBSTER and stated that he had been attempting to contact WEBSTER.  He introduced WEBSTER to Rubinson at that funeral.

33.     Following Abbott's death, DEAN GUITARS created a limited edition replica of the Dean From Hell. WEBSTER did not object because he believed that Defendant HANEY (Abbott's longtime girlfriend, sometimes described as his common law wife) and VINNIE PAUL ABBOTT would need some money following the death of Abbott, who was by far the most talented member of Pantera.  However, it soon appeared that the DEAN ENTITIES intended to continue profiting from the Dean From Hell and the Design.

34.      During several dinner meetings in 2005 and 2006, WEBSTER complained to Dean Zelinsky that the DEAN ENTITIES were continuing to exploit the Design.  By this time, WEBSTER had noticed an alarming trend of unrestricted licensing by HANEY, who claimed to be Abbott's wife or common law wife and seemed intent upon licensing his name and image wherever possible.  As just one example, after Krank Guitar amps (which were the actual amps Abbottt used) refused to release a low cost "Dimebag" amp that Abbott had never played and probably would not have approved, HANEY and Dean Zelinsky, on information and belief, took the amp proposal to the DEAN ENTITIES, which later released the amp using Abbott's name.

35.     Elliott Rubinson, the new owner of the DEAN ENTITIES profited so much from the association with Abbott that he had made a custom chopper called the "Dimebag," which was taken to major tradeshows such as NAMM.  On information and belief, Rubinson never met Dimebag Darrell Abbott.

36.     DEAN GUITARS heavily marketed the Design, the Lightning Storm Graphic and its association with Webter's creation.  Shown below is a photo of HANEY at a

tradeshow with a large replica of the Dean From Hell being used to promote the DEAN ENTITIES.  Webster was not compensated for this usage:



37.    In 2008 and 2009, WEBSTER and DEAN GUITARS collaborated on a guitar that was known and marketed as the Buddy Blaze Signature Model, but it was not the Dean From Hell.  On information and belief, this deal was made as an attempt to appease WEBSTER and to further confuse the public as to his approval and involvement with the Dean From Hell reissues.  The DEAN ENTITIES later released videos of WEBSTER talking about his Buddy Blaze Signature Model while also telling stories about the Dean From Hell.

38.    On information and belief, the DEAN ENTITIES' association with Abbott is one of its most valuable artist associations.  It has issued many guitars, amps and other products using the "Dimebag" name.  Abbott used none of these products.  In fact, for a long period, all U.S. "Dean" guitars were made by a company in Wisconsin.  Not until 2008 did the DEAN ENTITIES begin making guitars at their Tampa facility.  The DEAN ENTITIES

have come under increasing criticism for continuing to profit from the brand's association with Abbott, which is largely based upon a guitar modified by WEBSTER and which was made by the original Chicago Dean Guitars company that has been out of business for many years.

39.     Eventually, WEBSTER became alarmed and disappointed that DEAN GUITARS was continuing to profit from his design.  Not only was WEBSTER denied payment and recognition, his reputation suffered as the public believed he was agreeing to this exploitation.  Many people have asked WEBSTER if he is wealthy because of the Design, but the truth is that he was never paid anything.

40.     Abbott often spoke highly of WEBSTER and the guitar that became his signature guitar.  WEBSTER is certain that Abbott would not condone continual reissues of WEBSTER's design, especially with no recognition or payment to WEBSTER. Attached as Exhibit B are true and correct copies of examples of photos of guitars using the Design, all manufactured and distributed by the DEAN ENTITIES and currently on sale.  These guitars are available at dozens of retailers throughout the United States and have been used in extensive advertising campaigns for the DEAN ENTITIES.

41.     Over the years, WEBSTER brought up this issue many times with Rubinson. Rubinson always equivocated, leaving open the possibility that WEBSTER would be compensated.

42.     In 2005, WEBSTER moved to Hawaii and began manufacturing guitars there. WEBSTER's son tragically passed away in 2009, and he eventually moved back to Texas.

43.     Between the years 2005 and 2015, WEBSTER had multiple conversations with Rubinson, demanding that he be compensated because the DEAN ENTITIES continued to release new copies of the Design.

44.     In 2016, WEBSTER filed for a copyright registration and eventually contacted DEAN GUITARS regarding the copying of the Design. DEAN GUITARS forwarded the matter to the attorneys for the ESTATE, which ostensibly licenses the intellectual property surrounding the Dimebag guitars to DEAN GUITARS.  WEBSTER was unable to reach an

agreement with either of these parties, thus forcing him to bring this case.

45.    Before filing this case, WEBSTER's attorney forwarded the copyright registration information to the ESTATE's lawyer, who had no response.  The ESTATE did not contact the Copyright Office or object to the registration in any manner.  The ESTATE did not claim ownership of the copyright in the Design, nor did it demand an assignment from WEBSTER.  Before WEBSTER registered the Design, no person or entity ever attempted to file a copyright registration on the Design.

46.    Defendant GUITAR CENTER is a retailer of music equipment and identifies itself as "the world's largest musical instruments retailer."  It also owns and controls the large online site MusiciansFriend.com, which bills itself as "the world's largest seller of music gear."

47.    GUITAR CENTER and its subsidiary Musicians Friend have sold hundreds of thousands of dollars worth of "Dean From Hell" guitars.  On the GUITAR CENTER website, the "Dean From Hell" is listed as a "Best Seller."  The latest iteration of the "Dean From Hell" was set to be available at Guitar Center on August 18, 2017.

48.    Defendant HANEY was the longtime companion of Darrell Abbott, and was often referred to as his wife or widow.  After Abbott's death, HANEY took primary control of licensing his name, likeness and image.  Upon information and belief, HANEY entered into many improvident licensing deals.

49.    As noted, before Abbott died, he had re-established his relationship with DEAN GUITARS.  He was set to release a replica of the Dean From Hell, and, on information and belief, intended to give WEBSTER credit and a royalty for his hand in designing the original Dean From Hell.

50.    After Abbott died, on information and belief, Defendant HANEY, operating with input from Dean Zelinsky (at that time an employee or contractor with the DEAN ENTITIES), agreed with Rubinson (operating in his capacity as an owner and officer of the DEAN ENTITIES) to exclude WEBSTER from any licensing or transactions regarding the Dean From Hell.

51.     The actions of HANEY and the DEAN ENTITIES via Rubinson amounted to attempted conversion of WEBSTER's ownership of the Design.  During the pendency of this action, WEBSTER learned for the first time that HANEY and the ESTATE via VINNIE PAUL ABBOTT purported to license the Design to the DEAN ENTITIES, free of any encumbrances.  Upon information and belief, VINNIE PAUL ABBOTT and the ESTATE eventually took control of the licensing of Abbott's name and image, partially in an attempt to clean up the mess created by HANEY.

52.     However, the trend of over exploitation continued.  Initially, a small run of 150 custom replicas were made.   Moreover, the Design was used on other "Dimebag" guitars, including the "Rust From Hell," the "Cowboy From Hell" and the "Black Bolt."  (All Dean From Hell reissues will be referred to collectively as the "DFH Reissues".)

53.     Meanwhile, the DEAN ENTITIES pulled WEBSTER into its NAMM booth multiple times over the past 12 years to conduct interviews on the Dean From Hell.

54.     The DEAN ENTITIES continued to profit from its association with WEBSTER long after sale of the Buddy Blaze ML ceased.  Even after this case was filed, DEAN GUITARS played multiple videos of Buddy Blaze discussing both the Buddy Blaze ML and the Dean From Hell.

55.     These videos often feature stories about the Dean From Hell and often show the original Dean From Hell, creating the impression that WEBSTER continues to endorse the reissues of the Dean From Hell and that the reissues are in some sense equivalent to his creation.

56.     In fact, the DFH Reissues do not contain the same hardware as the original.  To create the original Dean From Hell, WEBSTER  reshaped the neck, designed the graphic, installed a heavily modified Floyd Rose tremolo bar, used a black and chrome hardware theme and had installed a Seymour Duncan Custom pickup in the bridge.  Abbott later made a few minor modifications: he changed the bridge pickup to one manufactured by Lawrence, he added a sticker of the rock group KISS, he put some electrical tape on the edge of the pickups, and traction knobs created by Abbott's guitar tech, Grady Champion, were put on.

57.     DFH Reissues do not use the same tremolo configuration, reshaped neck, or high quality pickups.  WEBSTER has not been consulted in anyway for these reissues.  Nor has he ever been compensated for creating the Dean From Hell, arguably the most iconic guitar associated with the DEAN ENTITIES. On information and belief, sometime after Abbott's death, HANEY, VINNIE PAUL ABBOTT, the DEAN ENTITIES (with input from their contractor / employee Dean Zelinsky) and Does 7-10 conspired to erase WEBSTER from the history of the Dean From Hell

58.     WEBSTER was cut out of discussions and deals involving his design contributions regarding the DFH Reissues. The "licensing agreements" were concealed, and WEBSTER was unaware of them until 2017.  On information and belief, when the final deal was signed, at least HANEY, the ESTATE, the late Elliott Rubinson and VINNIE PAUL ABBOTT were fully aware that WEBSTER was the creator of the Dean From Hell and had proprietary rights in the guitar and copyright rights in the Design.  On information and belief, these Defendants attempted to create a "clean title" on the Design and Lightning Storm Graphic so that it could be further exploited in violation of WEBSTER's rights.

59.     On information and belief, Defendant ESTATE has issued licenses to the DEAN ENTITIES to use the Design on guitars and to unknown third party manufacturers that make replicas or other music memorabilia, such as Bravado International Group, which is located in Los Angeles, California and, on information and belief, issues licenses for Pantera.

60.     The trend of reckless licensing continues.  For instance, Defendant EMOJI FAME recently released a series of Pantera "emojis" that display the Dean From Hell.  This license came from Bravado.  A license was also granted to Defendant AXE HEAVEN.

61.     Plaintiff is informed and believes and thereon alleges that Defendants HANEY, the ESTATE and the DEAN ENTITIES knew that Plaintiff owned the copyright in the Design and conspired together to deny Plaintiff his rights.  This conspiracy was actively concealed from Plaintiff so that he was unaware of it.

62.     Plaintiff is informed and believes and thereon alleges that Defendants HANEY,

the ESTATE and the DEAN ENTITIES agreed to deny Plaintiff his rights as the designer of the Dean From Hell while also creating the false impression and misrepresentation that the DFH Reissues were authorized by, sponsored by, originated from or were approved by Plaintiff and that Plaintiff was receiving payment from the DFH Reissues.  These misrepresentations are damaging the Plaintiff's reputation and brand as a high quality guitar manufacturer.   This conspiracy was actively concealed from Plaintiff so that he was unaware of it.

63.     Defendant AXE HEAVEN has created a miniature guitar that utilizes the Lightning Storm Graphic.

64.     Defendant Walmart sold miniature guitars produced by AXE HEAVEN. Plaintiff sent Walmart a DMCA notice on or about July 20, 2017.   WALMART appears to have stopped selling those infringing AXE HEAVEN mini guitars.

65.     However, after receiving that notice, Defendant WALMART began selling actual Dean guitars featuring the lightning storm graphic, including the Dean From Hell and Black Bolt.  The Black Bolt is another design that incorporates the Lightning Storm Graphic.

66.     On information and belief, Defendants have the right and ability to supervise the conduct of one or all of each other's infringing activities and have a direct financial interest in one or all of each other's infringing activities.

67.     On information and belief, Defendants had knowledge of the infringing conduct of one or all of each other and materially contributed to, induced or caused the infringing activity of one or all of each other.

## FIRST COUNT

### (Copyright Infringement (17 U.S.C. § 501, *et seq.*) Against All Defendants)

68.     Plaintiff realleges and reincorporates paragraphs 1 - 67 above, as though set forth fully herein.

69.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, had access to the Design.

70.     Plaintiff is informed and believes and thereon alleges that Defendant, and each of them, copied or distributed copies of the Design and/or licensed the Design.

71.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, infringed Plaintiff's copyright by creating, making and/or developing and/or licensing directly infringing and/or derivative works from Plaintiff's Design and by producing, distributing and/or selling and/or licensing infringing copies through a network or retail or websites.

72.     Defendants' infringement has caused substantial damage to Plaintiff, in an amount to be proven at trial. Plaintiff has suffered general and special damages. Defendants have also obtained profits either directly or indirectly from its infringing activities.

73.     Plaintiff is informed and believes and thereon alleges that Defendants HANEY and the ESTATE knew of Plaintiff's rights in the Design and misrepresented to the DEAN ENTITIES in 2014 if not earlier that they could legally license rights in the Design.

74.     Plaintiff is informed and believes and thereon alleges that Defendants' infringing activities have continued after Plaintiff demanded that they cease and desist, so that the infringing activities are willful, intentional and malicious.

75.     Defendants' infringement irreparably harms Plaintiff and leaves him without an adequate remedy at law, so that he is entitled to an injunction to halt any further infringing activity.  On information and belief, Defendants, and each of them, have vicariously or contributorily infringed Plaintiff's copyright in the Design.

76.     WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.     Ordering Defendants and their agents to pay monetary damage to Plaintiff in an amount sufficient to compensate him for all damages resulting from the unauthorized copying, distribution, display and sale of his work, including, but not limited to, his lost sales and disgorgement of Defendants' profits;

b.     Enjoining Defendants and their agents and servants all be enjoined from

licensing, selling, distributing, displaying or manufacturing items which infringe Plaintiff's copyrights on his work and from any unauthorized copying of any of Plaintiff's copyrighted work;

c.      Finding that any copyright infringement is willful;

d.      Ordering that Plaintiff be awarded prejudgment interest as allowed by law;

e.      Ordering Defendants recall all infringing products, account for them and destroy them or transfer them to Plaintiff; and

f.      Awarding such other relief as the Court deems proper under the circumstances.

## SECOND COUNT

### (Unfair Competition (15 U.S.C. Section 1125(a)) Against Defendants the DEAN ENTITIES, the ESTATE; HANEY; VINNIE PAUL ABBOTT and DOES 7-10 (the "UNFAIR COMPETITION DEFENDANTS")

77.     Plaintiff realleges and reincorporates paragraphs 1- 67 above, as though set forth fully herein.

78.     By their actions described above the UNFAIR COMPETITION DEFENDANTS have committed federal unfair competition in violation of (15 U.S.C. Section 1125(a)) by:

a.  Using the DHF Reissues to cause confusion, mistake or deception as to the affiliation, connection or association between the DEAN ENTITIES and GUITAR CENTER on the one hand and WEBSTER on the other;

b.  Making false or misleading descriptions of fact or misleading representations of fact which cause confusion, mistake or deception as to the origin, sponsorship or approval of the "Dean From Hell" reissues as to WEBSTER;

79.     The UNFAIR COMPETITION DEFENDANTS have caused confusion and made false or misleading descriptions of fact with full prior knowledge of WEBSTER's rights as the designer of the original Dean From Hell and are causing confusion and deception with the willful intention to trade on Plaintiff's reputation and goodwill.

80.     The UNFAIR COMPETITION DEFENDANTS' actions have been been

without the consent, permission, or authorization of Plaintiff.

81.     The UNFAIR COMPETITION DEFENDANTS' actions are likely to cause confusion, mistake, or deception as to the source, sponsorship, or authorization of the UNFAIR COMPETITION DEFENDANTS' products, and constitute a false representation and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.     Defendants' conduct has caused irreparable injury to Plaintiff's business and goodwill and will continue to do so unless enjoined by the Court.

83.     Plaintiff has no adequate remedy at law.

84.     WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.      Awarding damages to Plaintiff and an accounting of the profits of Defendants arising from Defendants' false designation of origin, and unfair competition, such damages to be trebled in view of the willfulness of Defendants' acts.

b.      Awarding damages arising from Defendants' unfair competition and false representations, including Plaintiff's loss of sales and restitution and disgorgement of the unjust enrichment which Defendants have enjoyed.

c.      Awarding costs and reasonable attorneys' fees and expenses incurred by Plaintiff in connection with this action.

d.      Imposing a mandatory injunction requiring Defendants to issue appropriate press releases, disclaimers and Internet posts to remedy any confusion, misrepresentation or wrongful association;

e.      Ordering Defendants recall all illegal products, account for them and destroy them or transfer them to Plaintiff;

f.      Awarding pre-judgment interest and post-judgment interest as permissible; and

g.      Awarding such other relief as the Court deems proper under the circumstances.

## THIRD COUNT

### (Common Law Unfair Competition Against the UNFAIR COMPETITION DEFENDANTS)

85.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 67, above, as though fully set forth at length.

86.     Defendants' continued, reverse passing off, and usurpation of WEBSTER's work and reputation constitute unfair competition.

87.     Defendants' conduct as described herein has been without Plaintiff's permission, consent or authorization.

88.     Plaintiff is entitled to special and general damages, lost profits and disgorgement because of the UNFAIR COMPEITITION DEFENDANTS' actions.

89.     Defendants have conduct evidences fraud, oppression and malice entitling Plaintiff to exemplary and punitive damages.

90.     Plaintiff has no adequate remedy at law and is entitled to an injunction.

91.     WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.      Awarding damages to Plaintiff and an accounting of the profits of Defendants arising from Defendants' false designation of origin, and unfair competition, such damages to be trebled in view of the willfulness of Defendants' acts.

b.      Awarding damages arising from Defendants' unfair competition and false representations, including Plaintiff's loss of sales and restitution for the unjust enrichment which Defendants have enjoyed.

c.      Awarding exemplary or punitive damages against Defendants, as available

d.      Awarding costs and reasonable attorneys' fees and expenses incurred by Plaintiff in connection with this action.

e.      Imposing a mandatory injunction requiring Defendants to issue appropriate press releases, disclaimers and Internet posts to remedy any confusion, misrepresentation or wrongful association;

f.      Ordering Defendants recall all illegal products, account for them and destroy them or transfer them to Plaintiff; and

g.      Awarding pre-judgment interest and post-judgment interest as permissible; and

h.      Awarding such other relief as the Court deems proper under the circumstances.

## FOURTH COUNT

### (Statutory Unfair Competition Pursuant to Cal. Bus. & Prof. Code § 17200  -- Against the UNFAIR COMPETITION DEFENDANTS, GUITAR CENTER, and MIOP/AXE HEAVEN)

92.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above.

93.     The actions of the UNFAIR COMPETITION DEFENDANTS, GUITAR CENTER and MIOP/AXE HEAVEN' as described herein constitute unlawful, unfair or fraudulent business practices as those terms are defined in Cal. Bus. & Prof. Code § 17200.

94.     PLAINTIFF is entitled to restitution or disgorgement of all profits gained by the UNFAIR COMPETITION DFENDANTS, GUITAR CENTER and MIOP/AXE HEAVEN as a result of their unfair competition.  Plaintiff is further entitled to an injunction against further unfair business practices.

95.      WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.      That disgorgement, restitution or injunctive relief be ordered, as appropriate, pursuant to Cal.Bus.&Prof.Code § 17200; and

b.      Awarding such other relief as the Court deems proper under the circumstances.

## FIFTH COUNT

**(Invasion of Privacy –Misappropriation against the DEAN ENTITIES Under Texas Law)**

96.    Plaintiff realleges and reincorporates paragraphs 1 - 67 above, as though set forth fully herein.

97.    By running videos of WEBSTER in connection with its products and the Dean From Hell, the DEAN ENTITIES have invaded Plaintiff's privacy and misappropriated and commercially exploited WEBSTER's likeness and name for monetary gain.

98.    The DEAN ENTITIES' invasion of privacy has caused substantial damage to Plaintiff, in an amount to be proven at trial. Plaintiff has suffered general and special damages. The DEAN ENTITIES have also obtained profits either directly or indirectly from the misappropriation.

99.    Plaintiff is informed and believes and thereon alleges that the DEAN ENTITIES' infringing activities have continued after Plaintiff demanded that they cease and desist, so that the infringing activities are willful, intentional and malicious.

100.   The DEAN ENTITIES' invasion of privacy irreparably harms Plaintiff and leaves him without an adequate remedy at law, so that he is entitled to an injunction to halt any further infringing activity.

101.   WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.     Awarding damages to Plaintiff and an accounting of the profits of Defendants arising from Defendants' false designation of origin, and unfair competition, such damages to be trebled in view of the willfulness of Defendants' acts.

b.     Awarding damages arising from Defendants' unfair competition and false representations, including Plaintiff's loss of sales and restitution for the unjust enrichment which Defendants have enjoyed.

c.     Awarding exemplary or punitive damages against Defendants, as available

d.     Awarding costs and reasonable attorneys' fees and expenses incurred by Plaintiff in connection with this action.

e.      Imposing a mandatory injunction requiring Defendants to issue appropriate press releases, disclaimers and Internet posts to remedy any confusion, misrepresentation or wrongful association;

f.      Awarding pre-judgment interest and post-judgment interest as permissible; and

g.      Awarding such other relief as the Court deems proper under the circumstances.

## SIXTH COUNT

### (Civil Conspiracy Under Texas Law Against HANEY, the DEAN ENTITIES, VINNIE PAUL ABBOTT and the ESTATE)

102.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above.

103.   The actions of HANEY, the DEAN ENTITIES, VINNIE PAUL ABBOTT, the ESTATE and DOES 7 – 10 constituted a conspiracy to deprive WEBSTER of his rights in the Lightning Storm Graphic and the Dean From Hell design and misuse his name without proper credit or compensation, which constituted an unlawful act(s).

104.   HANEY, the DEAN ENTITIES, VINNIE PAUL ABBOTT, the ESTATE and DOES 7-10 committed overt acts (such as wrongful assertion of dominion over the Lightning Storm Graphic and Design, wrongful use of Plaintiff's reputation and likeness and infringement of copyright) in furtherance of the conspiracy.

105.   WEBSTER has been damaged by the acts performed pursuant to the conspiracy.

106.   WHEREFORE, WEBSTER respectfully requests this Court to enter judgment in its favor and against Defendants:

a.      Awarding general and special damages to Plaintiff and an accounting of the profits of Defendants arising from Defendants' conspiracy. Awarding exemplary or punitive damages against Defendants, as available

b.      Awarding costs and reasonable attorneys' fees and expenses incurred by Plaintiff in connection with this action.

c.  Awarding pre-judgment interest and post-judgment interest as permissible; and

d.  Awarding such other relief as the Court deems proper under the circumstances.

DATED:  September 9, 2017                    KARISH & BJORGUM, PC


By:
A. Eric Bjorgum
Attorneys for Plaintiff
BUDDY WEBSTER

## REQUEST FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby requests a trial by jury of all issues raised by its counterclaims which are properly triable to a jury.

Dated: September 9, 2017          Respectfully submitted,


By:_____
A. Eric Bjorgum
KARISH & BJORGUM PC
Attorneys for Plaintiff BUDDY WEBSTER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.


Dated: September 9, 2017          Respectfully submitted,


By:_____
A. Eric Bjorgum
KARISH & BJORGUM PC
Attorneys for Plaintiff BUDDY WEBSTER

# Exhibit A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Teyle Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

**VA 2-021-979**

**Effective Date of Registration:**
June 04, 2016

---

## Title

**Title of Work:**   Lightning Storm Guitar Design"

## Completion/Publication

**Year of Completion:**   1986
**Date of 1st Publication:**   January 20, 2005
**Nation of 1st Publication:**   United States

## Author

- **Author:**   Buddy Webster
  **Pseudonym:**   Buddy Blaze
  **Author Created:**   2-D artwork
  **Citizen of:**   United States
  **Pseudonymous:**   Yes

## Copyright Claimant

**Copyright Claimant:**   Buddy Webster
P.O. Box 535892, Grand Prarie, TX, 75053, United States

## Rights and Permissions

**Name:**   Joyce Webster
**Email:**   joyce@buddyblaze.com
**Address:**   P.O. Box 535892
Grand Prarie, TX 75053 United States

## Certification

**Name:**   Eric Bjorgum
**Date:**   June 04, 2016
**Applicant's Tracking Number:**   Buddy Blaze

**Correspondence:**   Yes



# Exhibit B

GUITARS ▾  BASSES ▾  ACOUSTICS ▾  AMPS ▾  MERCH ▾  ARTISTS ▾  SUPPORT ▾  DEALERS ▾  SEARCH 🔍  CART 🛒

# USA DIME ML RUST FROM HELL
# LIMITED RUN 100 PC

MSRP: $6443.80
PRICE: $3699.00 ✓

ADD TO CART

✓ FREE SHIPPING (limited time, US only - lower 48)



FREE SHIPPING ON ALL GUITARS (Continental US Only) | LIMITED LIFETIME WARRANTY! | 100% QUALITY GUARANTEE! | TRUSTED SERVICE FOR ALMOST 40 YEARS

Contact your local USA Dean Dealer or deanusa@deanguitars.com for pricing and ordering.

| | | | |
|---|---|---|---|
| Item ID | USA ML DIME RFH | Hardware Color | Black Trem / Nickel Tuners |
| Top | Mahogany | Bridge | Floyd Rose Original |
| Body | Mahogany | Pickup (Neck) | USA DMT DimeTime |
| Neck | Mahogany | Pickup (Bridge) | Bill Lawrence L500XL |
| Scale Length | 24 3/4" | Binding | None |
| Neck Type | Set | Finish | Gloss |
| Neck Profile | V | Color | Air Brushed Rust From Hell |
| Fingerboard | Rosewood | Case Options | Deluxe Hard Case Included |
| Inlays | Pearl Dot | | |
| # of Frets | 22 | | |
| Knobs | DBD Traction | | |

Strings: Dimebag Darrell Signature Hi-Voltage strings by DR Strings

Due to Dean's commitment to ongoing research and development, product specifications are subject to change without notice. In some instance, the product pictured here might vary slightly from our products in the marketplace.

## SEE ALSO...



