## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BUDDY WEBSTER,

      Plaintiff,

v.                                Case No. 8:17-cv-01795-T-02CPT

VINNIE PAUL ABBOTT, ARMADILLO
DISTRIBUTION ENTERPRISES, INC.,
ARMADILLO ENTERPRISES, INC.,
DEAN GUITARS, DOES 7-10 inclusive,
EMOJI FAME, Estate of DIMEBAG
DARRELL ABBOT, GUITAR CENTER, INC.,
RITA HANEY, MIOP HOLDINGS, LLC,
WAL-MART STORES, INC.

      Defendants.
_____/

## <u>ORDER</u>

      This matter comes to the Court on cross-motions for summary judgment

from all remaining parties: Plaintiff, Dkt. 189, Defendant Haney, Dkt. 161, and

Defendants Armadillo Distribution Enterprises, Inc., Armadillo Enterprises, Inc.,

Dean Guitars, Mr. Darrell Abbott's Estate, and Guitar Center, Inc., Dkt. 129. Also

ripe are Defendant Armadillo Distribution Enterprises, Inc.'s Motion to Strike

Certain Inadmissible Declarations and Exhibits in Support of Buddy Webster's

Motion for Summary Judgment, Dkt. 209, and a Joint *Daubert* Motion to Exclude

Alan Niven, Dkt. 160. The Court **GRANTS** Defendants' motions for summary judgment. The remaining motions are denied as moot.

## BACKGROUND

The relevant facts are largely undisputed. *See* Dkt. 207. Plaintiff is a luthier and guitar technician who goes by "Buddy Blaze." Dkt. 194 at 2. Sometime around 1985, Plaintiff physically modified a Dean ML guitar produced by Dean Guitars and had the guitar painted blue with a lightning graphic.[1] *Id.* at 3-12; Dkt. 223 at 40.[2] In 1987, Plaintiff gave the guitar to his friend, Darrell Abbott, who called it "The Dean from Hell" ("DFH"). *Id.* at 17-18. Mr. Abbott went on to become a guitarist in the band Pantera and known as "Dimebag Darrell." *Id.*

In 2004, Mr. Abbott signed a royalty endorsement-type contract with Dean Guitars. Dkt. 164-2 at 2; Dkt. 194 at 18. In December of the same year, Mr. Abbott was murdered on stage by a deranged fan. Dkt. 194 at 18. During this time frame, Dean Guitars began to sell reissues of the DFH. Dkt. 139 at 3; Dkt. 223 at 24, 62. Plaintiff learned about the sales in December 2004. Dkt. 223 at 24. The 2004-2005

---

[1] The ML model has a distinctive shape, similar to an upside-down "Y." The lightning design motif is ubiquitous in the "heavy metal" music genre. This record contains references to band logos, album covers, and several other guitars produced by Plaintiff as well as an early acoustic model of Mr. Abbott's with lightning designs.

[2] At the motion hearing on November 13, 2018, the Court instructed the parties to provide copies of the depositions in their entirety. Plaintiff's deposition is entered on the docket under seal as Dkt. 223.

sales were to be 150 units at $5,000 a piece. Dkt. 194 at 18. Defendants did not ask Plaintiff's permission to make the sales. Dkt. 223 at 31.

Following Mr. Abbott's funeral, Dean Zelinsky, former owner of Dean Guitars, contacted Plaintiff about painting a copy of the DFH for release. Dkt. 194 at 18. Plaintiff explained that he did not have a paint booth and that Craig Patchin had painted the original version at Plaintiff's direction. *Id.*

Plaintiff testified that in early 2005 (after he knew Dean Guitars was selling DFH replicas) he lent photographs to Dean Guitars for a display at the 2005 National Association of Music Merchants ("NAMM") tradeshow which linked Plaintiff to Mr. Abbott and the DFH. Dkt. 223 at 30. Plaintiff testified, "I was okay with them displaying it at the booth during the show." *Id.*

By 2006, Plaintiff knew Dean Guitars was selling the DFH as a "mass-market product" with several price points and versions. Dkt. 223 at 102. He participated in none. That year, Plaintiff observed another, new infringement of the copyright he claims to own. He knew that Dean Guitars was issuing a cheap, imported version of the DFH called Cowboy From Hell or DFH/CFH. This made Plaintiff unhappy at the time. Dkt. 194 at 18-19. Defendants did not have Plaintiff's permission, Dkt. 223 at 31, and in 2006 Plaintiff told then CEO of Dean Guitars, Elliot Rubinson, "we've got to work this out. . . . I'm not okay with what's

3

going on," Dkt. 223 at 32. Plaintiff said, "you can't do that without, you know, my blessing, without a release from me." *Id.*

In April 2007, Plaintiff contacted Mr. Rubinson to ask about the continued reproduction of the DFH. Dkt. 223 at 67. Mr. Rubinson replied in an email, "I have taken some time and spoken to several 'people in the know' and the consensus concerning Dime's graphic is that Dime's estate is the legal owner of it. With that said, I still would like to work with you on a Dime project because I am not about making enemies but keeping friends." Dkt. 129-2 at 56. Mr. Rubinson continued in a separate paragraph, "Rita and I have plans to do a relic Dean from Hell and would like you involved for a royalty. Is that of interest?" *Id.*

Plaintiff testified in his deposition that after reading the email he called Mr. Rubinson and said, "it's baloney and you know better and we got to work this out." Dkt. 223 at 68. Mr. Rubinson "suggested that [Plaintiff] sue the estate" as owner/licensor of the graphic. *Id*. Plaintiff further testified that he continued to inquire about the graphic, but Mr. Rubinson told him to sue the estate, did not pay Plaintiff royalties, and continued to pay royalties to the estate. *Id.* at 69-70.

The next year, Plaintiff reasserted his objection to his copyright design being stolen. Dkt. 194 at 19. He testified he told the principals of Dean Guitars at the

2008 NAMM tradeshow, "I did not want them to continue to exploit Abbott's legacy and the DFH." *Id.*

In 2009, Plaintiff worked on his own signature guitar, the Buddy Blaze ML, produced and sold by Dean Guitars. Dkt. 194 at 19. In an interview at the 2009 NAMM show, Plaintiff, alongside Mr. Rubinson, promoted the Buddy Blaze ML. Plaintiff also provided a brief history of the DFH and compared his model with the DFH. Dkt. 129-1 Ex. 10. In a similar interview at NAMM 2009, Plaintiff again promoted his "Buddy Blaze" model guitar and mentioned Mr. Abbott. Dkt. 129-1 Ex. 11.

In 2009, the theft of Plaintiff's alleged copyright again came to his attention. A version of DFH known as "Rust From Hell" with the lightning graphic was marketed and sold by Dean Guitars. Dkt. 194 at 20.

Plaintiff has appeared and been referenced in other videos apparently produced by Dean Guitars. Dkt. 129-1 Ex. 4-7, 12. Dean Guitars' website at one time linked two YouTube videos featuring interviews with Plaintiff. Dkt. 195 at 2-3.[3] In the first, Plaintiff again gave the history of DFH in front of the original DFH. In the second, Plaintiff once more promoted his own guitar and volunteered

---

[3] Although the videos were not formally included among summary judgment materials, the web links were. As of November 30, 2018, the videos are available at https://www.youtube.com/watch?v=pa_zNJR2NAA&t=268s and https://www.youtube.com/watch?v=7QYkjWqPltw.

information about Mr. Abbott and the DFH. Neither video makes any mention of DFH reissues.

In 2016, Plaintiff registered his copyright in the DFH lightning graphic design. Dkt. 194 at 20. He filed suit on April 21, 2017 in the U.S. District Court for the Central District of California. Dkt. 1. On July 26, 2017, the court granted a motion from some of the Defendants to transfer venue to the Middle District of Florida. Dkt. 45.

Plaintiff's Second Amended Complaint alleges (1) copyright infringement; (2) federal unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125; (3) common law unfair competition; (4) California statutory unfair competition; (5) invasion of privacy under Texas common law; and (6) civil conspiracy under Texas law. Dkt. 70.[4] He seeks a variety of relief, including damages and injunctions.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] Defendants do not explicitly challenge the choice of law aspect of the case, which features two common law claims under Texas law, another under Florida law, and a violation of a California statute. In any event, even under his choice of law Plaintiff's case is unavailing.

Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.,* 93 F. 3d 739, 742 (11th

Cir. 1996).  If met, the burden shifts to the nonmoving party to "come forward with

specific facts showing that there is a genuine issue for trial."  *Shaw v. City of*

*Selma*, 884 F. 3d 1093, 1098 (11th Cir. 2018) (citation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome of the

case.'" *Shaw*, 884 F.3d at 1098.  And, to raise a genuine "dispute," the nonmovant

must point to enough evidence that "a reasonable jury could return a verdict for

[him]." *Id.* (modification in original). The Eleventh Circuit further teaches that

"[w]hen considering the record on summary judgment 'the evidence of the

nonmovant is to be believed, and all justifiable inferences are to be drawn in his

favor.'" *Id.* (citations omitted).

## DISCUSSION

Plaintiff's copyright infringement and civil conspiracy claims are time-

barred. The Court moreover finds that any appearance of or reference to Plaintiff in

the videos at issue do not constitute unfair competition or an invasion of privacy.

I.    Plaintiff's copyright claim is barred by the statute of limitations.

Plaintiff first alleges that, by using and profiting from the DFH lightning

design, Defendants infringed upon Plaintiff's copyright ownership of the design

under 17 U.S.C. § 501. Section 507, however, provides that "[n]o civil action shall

be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507.

Though a copyright infringement claim separately accrues with each infringing act, "[w]here the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." *Lott-Johnson v. Estate of Goreau*, 1:14-cv-03104-WSD, 2015 WL 4389979, at *3 (N.D. Ga. July 15, 2015) (citations omitted); s*ee also Black Box Royalties, Inc. v. Universal Music Publ'g, Inc.*, No. 1:15-cv-04013, 2017 WL 3508727, at *6-7 (N.D. Ga. Feb. 21, 2017) (finding claims time-barred where the gravamen of the dispute was ownership); *Nicholson v. Shafe*, No. 1:07-CV-2724-BBM, 2009 WL 10664978, at *4 (N.D. Ga. Oct. 5, 2009), *aff'd*, 392 F. App'x 673 (11th Cir. 2010). This cannot be avoided "by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." *Black Box Royalties, Inc.*, 2017 WL 3508727, at *6-7 (citation omitted).[5]

---

[5] Nothing in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) precludes this analysis. In holding that laches is not a defense to a derivative, non-ownership infringement claim brought within the statutory three-year look-back period, the U.S. Supreme Court did not need to address the point of accrual in an ownership suit. 572 U.S. at 667; *see also Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 997 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 447 (2016) ("Accordingly, *Petrella* has not displaced the consensus view of our sister circuits that disputes about copyright *ownership* accrue only once.") (emphasis in original).

Though in his complaint Plaintiff styles the claim as copyright infringement, it is undisputed that the heart of the case concerns the creation and ownership of the lightning design; Plaintiff asserts he owns the lightning graphic and that Defendants do not. Similar to the plaintiff in *Black Box*, Plaintiff asserts that Defendants violated copyright by "creating, making and/or developing and/or licensing directly infringing and/or derivative works from Plaintiff's Design and by producing, distributing and/or selling and/or licensing infringing copies through a network or retail or websites." Dkt. 70 ¶ 71. Put another way, Plaintiff claims Defendants do not own the lightning graphic design. In Plaintiff's words, "that's my creation, and it was specifically reproduced without my blessing and consent." Dkt. 223 at 39.

Though the U.S. Court of Appeals for the Eleventh Circuit has not yet defined the point of accrual for an ownership claim, a concurrence in *Calhoun v. Lilenas Publ'g*, 298 F.3d 1228 (11th Cir. 2002) noted that a copyright infringement claim's "limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement." 298 F.3d at 1236 (Birch, J., specially concurring); *see also Lott-Johnson*, 2015 WL 4389979, at *3; *Black Box*, 2017 WL 3508727 at *6. The district court in *Nicholson*, however, did not look to *Calhoun* in observing that the test for accrual

9

of an ownership claim varies by circuit. 2009 WL 10664978, at *4. In the Sixth and Ninth Circuits, the claim accrues "when plain and express repudiation of co-ownership is communicated to the claimant." *Id.* (citations omitted).[6] In the First, Second, Fifth, and Seventh Circuits, with language that closely parallels the concurrence in *Calhoun*, the clock starts "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Id.* (citations omitted).

Under either test, Plaintiff's claim accrued more than three years prior to this 2017 lawsuit. Plaintiff learned as early as 2004 that Dean Guitars was selling $750,000 worth of guitars with the DFH lightning design. And following Mr. Abbott's funeral, Dean Zelinsky, former owner of Dean Guitars, contacted Plaintiff about painting a copy of the DFH. By 2006, Plaintiff was demanding the DFH sales cease or Defendants obtain a "release" from him. Dkt. 223 at 32. Mr. Zelinksy responded, "it's better to ask forgiveness than permission." *Id.* Plaintiff testified they had "numerous talks" about this. *Id.* Mr. Rubinson's 2007 email then expressed in no uncertain terms his company's position that Mr. Abbott's estate

---

[6] Whether the ownership claim concerns joint ownership or sole ownership should not affect the timing of accrual. *See Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013) (citing 3 Nimmer & Nimmer, *Nimmer on Copyright*, § 12.05[C][2]).

owned the lightning design, and Plaintiff did not. This was in direct response to Plaintiff's inquiry about the continued reproduction of DFH.

Plaintiff argues that Mr. Rubinson muddled any repudiation by, in the same email, noting plans for a relic DFH with the possibility of royalties for Plaintiff. *Cf. Dynamic Measurement Grp., Inc. v. Univ. of Oregon*, 121 F. Supp. 3d 1047, 1069 (D. Or. 2015) (finding that selling a product without paying royalties is relevant for repudiation). But such an olive-branch proposition does not make Mr. Rubinson's repudiation of Plaintiff's claim to ownership any less express. Indeed, in the same email Mr. Rubinson stated he wanted to work with Plaintiff because he was "not about making enemies but keeping friends." Mr. Rubinson's language, moreover, is clear that any royalties would have stemmed from Plaintiff's work with a possible future relic model, not the original DFH.

If this were not enough, Plaintiff testified he then called Mr. Rubinson who "suggested that [Plaintiff] sue the estate" as owner/licensor of the graphic. Plaintiff further testified that "throughout the entire process," when he continued to inquire about the graphic, Mr. Rubinson suggested Plaintiff sue Mr. Abbott's estate, did not pay him royalties, and continued to pay royalties to the estate. Dkt. 223 at 33.

Plaintiff lastly argues that he decided to withhold filing suit in respect for Mr. Abbott's family following Mr. Abbott's death in 2004 and, later, because of

his own family issues related to the drug addiction and 2009 death of Plaintiff's son, and because of Mr. Rubinson's failing health. Dkt. 140 at 16.

Plaintiff also said he withheld a suit against Mr. Abbott's estate in the four to five years after his death for fear of Mr. Abbott's fanbase: "It would have been suicide, and I am talking literally." Dkt. 223 at 33. It is unclear how this fear impeded a lawsuit against the guitar company.

Notwithstanding Plaintiff's long delay, as to the guitar company defendant Plaintiff testified "they had an obligation to settle this right from the get-go and work it out." *Id.* at 101. Plaintiff seems to implicitly argue that equity compels the Court to toll the statute of limitations for the twelve and a half years that Plaintiff sat on his rights, from December 2004 to April 21, 2017. *See Nicholson*, 2009 WL 10664978, at *5 ("[O]nce a defendant has shown that a claim is time barred by the applicable statute of limitations, it is incumbent upon the plaintiff, if he is to avoid the bar, to come forward and demonstrate that for some equitable reason the statute should be tolled in his case.") (citation omitted). While some of Plaintiff's excuses for delay are admirable, he provides no authority suggesting they can stay the statute of limitations.

In sum, the three-year statute of limitations bars Plaintiff's copyright infringement claim. Plaintiff first filed on April 21, 2017. This copyright cause of action accrued *well before* April 21, 2014.[7]

II.     Plaintiff's civil conspiracy claim is also barred by the statute of limitations.

Plaintiff alleges that Defendants, along with former defendant Vinnie Abbott, committed actions that "constituted a conspiracy to deprive [Plaintiff] of his rights in the Lightning Storm Graphic and the Dean From Hell design and misuse his name without proper credit or compensation" and that they "committed overt acts (such as wrongful assertion of dominion over the Lightning Storm Graphic and Design, wrongful use of Plaintiff's reputation and likeness and infringement of copyright) in furtherance of the conspiracy." Dkt. 70 ¶¶ 103-104.

To make out civil conspiracy in Texas, the claimant must show "(1) there is a combination of two or more persons, (2) there is an agreement or meeting of the minds among these persons, (3) on a common object, purpose or course of action, (4) knowledge of the object and purpose, (5) one or more overt acts, and (6) intent to participate therein." *Jones v. Hunt Oil Co.*, 456 S.W.2d 506, 510 (Tex. App. 1970) (citation omitted).

---

[7] It is unnecessary to consider Defendants' contention that the artist, rather than Plaintiff, created and owned the lightning graphic.

13

The cause of action, however, has a two-year statute of limitations. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App. 1990) (citation omitted). While a claim normally "accrues when the allegedly tortious act is committed," in some cases a "cause of action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Endura Prod. Corp v. Altemus*, No. 11-13-00090-CV, 2015 WL 2345431, at *2 (Tex. App. May 7, 2015) (internal quotation marks and citations omitted).

Under either test, Plaintiff's civil conspiracy claim accrued beyond the two-year statute of limitations. Plaintiff alleges concert among Defendants to infringe upon his copyright ownership in the lightning design. Plaintiff became aware of this in late 2004. At the very least, this accrual was set forth in writing for Plaintiff by the April 2007 email. In it, Mr. Rubinson responded to Plaintiff's issue with Dean Guitars using the design and rejected Plaintiff's ownership claim. Mr. Rubinson moreover had consulted individuals "in the know," which Plaintiff interpreted as the estate, the administrator of which was Vinnie Abbott. Dkt. 223 at 69. Mr. Rubinson then added that he and Defendant Haney were considering a DFH replica which would use the lightning graphic.

Plaintiff is unable to cobble together a civil conspiracy claim as a means to circumvent a time-bar on a different claim for the same underlying conduct. The statute of limitations also bars Plaintiff's civil conspiracy claim.

III.   Defendants did not engage in unfair competition under the Lanham Act, common law, or California statute.

Plaintiff's unfair competition claims under the Lanham Act, common law, and the California statute share a common theory and the same fatal deficiencies.[8] Plaintiff objects to the use of Plaintiff's image "for years in connection with the historical fact of his creation of the Dean From Hell," especially as it relates to the reissues. Dkt. 189 at 19. As a result, "people came to think that [Plaintiff] was wealthy or had authorized these uses of his name and likeness" and this association damaged his reputation. *Id.* at 19, 22. But the content Plaintiff puts forth in support is not actionable.

Section 41(a) of the Lanham Act provides "two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384

---

[8] As an initial matter, contrary to Defendants' contention, because these claims do not dispute the ownership or infringement of the lightning design, the Copyright Act does not preempt them. *See* 17 U.S.C. § 301(a); *see also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990) ("A claim for unfair competition *based upon allegations of copying*, and in the absence of proof of any element of unfair competition other than copying, is clearly pre-empted by the Act.") (emphasis added).

15

(2014) (citation omitted). As Plaintiff points out, use of one's image can form the basis for a false advertising claim. *See Burciaga v. Gold Club Tampa, Inc.*, 8:16-cv-790-T-27JSS, 2016 WL 9526567, at *2-3 (M.D. Fla. Dec. 28, 2016).[9]

To prevail on false advertising, the plaintiff must show that the defendant made (1) false or misleading statements; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (alteration in original) (citation omitted).

Setting aside issues with proving injury and a possible fair use defense, the most fundamental flaw in Plaintiff's argument is that Defendants' statements were

---

[9] In the summary judgment papers Plaintiff does not explicitly argue for false endorsement or association, s*ee* Dkts. 189 at 20-23, 140 at 17-18, though his complaint does include such a theory of liability, Dkt. 70 ¶¶ 78-81. This requires the plaintiff to show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (internal quotations and citations omitted); *see also Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.") (citation omitted). Perhaps because neither party spent significant time addressing false endorsement or likelihood of confusion, the Court has very little material on which to base an analysis of the factors laid out in *Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010). In any event, even if "Buddy Blaze" is a protectable mark, the record contains insufficient evidence for a reasonable jury to find that Defendants' limited usage of Plaintiff's name creates a likelihood of confusion about Plaintiff endorsing the DFH reissues.

neither false nor misleading. Indeed, the very basis of Plaintiff's copyright claim is that he created and owns the DFH. Most of the statements at issue concerning the history of the DFH and Plaintiff's friendship with Mr. Abbott are made by Plaintiff himself. Importantly, Defendants made no misleading statements with respect to any endorsement or sponsorship of the DFH reissues, or even Dean Guitars itself. In fact, there are no such statements or implicit suggestions linking Plaintiff to the replicas at all.

In one video, an interviewer remarked on the "beautiful piece of artwork" of the DFH and asked Plaintiff to briefly tell its history, which he did. Dkt. 129-1 Ex. 6. The interviewer then spoke with Defendant Haney. Throughout the segment, they stood over a replica of the DFH. There was no mention of any sale of reissues.

In an interview at the 2009 NAMM show, Plaintiff, alongside Mr. Rubinson, promoted his "Buddy Blaze" brand guitar sold by Dean Guitars. *Id.* Ex. 10. Plaintiff again provided a brief history of the DFH and compared his model with the DFH. There was no mention of the reissues. In a similar interview at NAMM 2009, Plaintiff promoted his guitar and mentioned Mr. Abbott. There was no mention of the reissues. *Id.* Ex. 11.

In a video apparently produced by Dean Guitars, an artist relations director first looked at the original DFH and commented in passing that "this was the one

that Buddy Blaze painted way back in the day."[10] *Id.* Ex. 12. The director then

introduced the reissue, noting that Dean Guitars worked with Mr. Abbott's estate

"exclusively" in the project.

In one of the YouTube videos once linked on Dean Guitars' website,

Plaintiff again gave the history of DFH in front of the original DFH. In the other,

Plaintiff promoted his own brand guitar and volunteered information about Mr.

Abbott and the DFH. Neither video made any mention of DFH reissues.

Additionally, an attendee at the NAMM shows, Steve Parnell, stated in his

declaration "I heard Dean representatives using Buddy's name when selling the

Dean From Hell copies. The gist of their statements was that Dean was selling

guitars like the one that Buddy Blaze re-built for Darrell." Dkt. 164-2 at 3. There is

again nothing untrue or misleading about such statements.

There is no suggestion in any material Plaintiff sets forth that Defendants

used Plaintiff's name or likeness to sell or market the DFH reissues, or any

suggestion that Plaintiff endorsed or derives income from the guitars. The only

explicit connection between Plaintiff and Dean Guitars is the separate project for

Plaintiff's model. Moreover, to the extent Plaintiff complains that individuals have

---

[10] To the extent this may misconstrue the facts as it was Mr. Patchin who painted the guitar at Plaintiff's direction, this mistake is immaterial and, in any event, could not cause Plaintiff any injury.

accused him of profiting from Mr. Abbott's death, Plaintiff did not shy away from his past with Mr. Abbott. In fact, he embraced Mr. Abbott's legacy as seen in his pitches for his own guitar and the statement on Plaintiff's own website: "Buddy is also the creator of the legendary 'Dean From Hell.' Buddy totally reinvented his previously maroon colored 1981 Dean ML, later giving it to his close friend 'Dimebag' Darrell Abbott." Dkt. 129-15.

Lastly, Plaintiff not only admits to voluntarily participating in each video in which he makes an appearance. Dkt. 223 at 74. He also states that he was not harmed by the 2009 NAMM videos where he promoted the Buddy Blaze ML and discussed the history of the DFH. *Id.* at 72, 74. Plaintiff further testified he has "no specific knowledge of harm" caused by any of the videos in which he voluntarily gave interviews. *Id.* at 74.

These facts are distinct from the few unfair competition cases Plaintiff relies upon. In *Burciaga*, the plaintiffs were three models who alleged the defendant used their pictures without permission to promote a strip club. 2016 WL 9526567, at *2. In *Chen v. Cayman Arts, Inc.,* 757 F. Supp. 2d 1294, 1299 (S.D. Fla. 2010), the court simply noted that because the plaintiff's unfair competition claim was pleaded to include likelihood of confusion, it was not duplicative of a misappropriation claim. 757 F. Supp. 2d at 1299.

19

In the absence of false or misleading statements, Plaintiff is unable to establish a prima facie case of false advertising under the Lanham Act. Turning to Plaintiff's related claims, unfair competition under Florida common law requires (1) deceptive or fraudulent conduct of a competitor; and (2) likelihood of consumer confusion. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1494 (11th Cir. 1990). And, under the California statute, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.[11]

The above analysis once more guides the Court's determination that no untrue or misleading statements were made under Florida common law or the California statute and that no unfair competition claim withstands summary judgment.

IV. <u>Defendants did not invade Plaintiff's privacy.</u>

Plaintiff's invasion of privacy by misappropriation claim similarly fails. A plaintiff must show that (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Express*

---

[11] Plaintiff seemingly neglects to include his analysis under the California statute in his motion for summary judgment. Dkt. 189. The Court assumes the theory is similar in nature.

*One Int'l v. Steinbeck,* 53 S.W.3d 895, 900 (Tex. App. 2001) (citation omitted). Appropriation becomes actionable when a name or likeness "is used to advertise the defendant's business or product, or for some similar commercial purpose." *Id.* (internal quotation marks and citation omitted); *Enterprises, LLC v. Hippo Golf Co., Inc*., 646 F. Supp. 2d 1347, 1351 (S.D. Fla. 2009).

The theory is similar to the unfair competition claims: Dean Guitars used Plaintiff's image and name for the value associated with it and thereby profited. With respect to the interviews, Defendants point out that Plaintiff admitted he knew he was being videotaped, that he voluntarily participated, and that the videos did not cause him any harm. In response, Plaintiff argues he permitted use as it related to the history of DFH, but not reissues of the guitar. Dkt. 189 at 16-17.

The U.S. District Court for the Middle District of Florida analyzed the extent of consent as a defense to invasion of privacy in *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1221 (M.D. Fla. 2002).[12] The court in *Lane* held that the defendant did not invade the plaintiff's privacy by misappropriation when it used filmed footage of her in a *Girls Gone Wild* video, notwithstanding the cameraman's representations that the video would not be shown to anyone not

---

[12] Plaintiff claims that Defendants cannot rely on caselaw from within the Eleventh Circuit to resolve a Texas common law issue, though he does precisely this. Dkt. 140 at 16-17. In any event, the caselaw appears to have developed similarly enough to be persuasive.

present at filming. 242 F. Supp. 2d at 1221. In so finding, the court noted the interactions between the plaintiff and cameraman on a public street "were not private in nature" and that the plaintiff should have suspected the video would be shared. *Id.*[13]

Like the plaintiff in *Lane*, Plaintiff certainly had some idea of the extent of the publication of the interviews yet nonetheless consented. Each video appears to have been filmed by Dean Guitars and, moreover, at trade shows for music merchants. As for the reissues, Plaintiff no doubt knew that the guitar Defendant Haney signed in one of the NAMM videos was not the original DFH. Plaintiff nonetheless voluntarily related the history of the DFH to the interviewer. Reissues do not appear and are not referenced in any other video featuring Plaintiff.

It is arguable that due to the level to which Plaintiff embraced his role in the history of the DFH, his consent even extended to the 2015 NAMM video or the statements Mr. Parnell overheard from Dean Guitars representatives. In any event, there is insufficient evidence at summary judgment that Defendants appropriated Plaintiff's name or likeness for the value associated with it. The artist relations

---

[13] Meanwhile, the cases Plaintiff cites do not address consent, but instead conduct falling outside of a contract. *Zim v. Western Pub. Co.*, 573 F.2d 1318, 1327, 4 Media L. Rep. (BNA) 1467 (5th Cir. 1978); *Enterprises, LLC v. Hippo Golf Co., Inc.*, 646 F. Supp. 2d 1347, 1351 (S.D. Fla. 2009); McCarthy, 2 Rights of Publicity and Privacy § 10:36 (2d ed). Presumably, even if use of name or likeness is not pursuant to a publishing or licensing agreement, the claimant's consent would be a defense.

director merely mentioned in passing that the original DFH was painted by Plaintiff "back in the day," and this was only to provide historical background. There are no facts suggesting this was not also the case for the statements Mr. Parnell overheard.

All of the claims related to marketing the DFH and Plaintiff fail for another reason. The claims are based on several videos, but the videos are extracted from either an old Dean Guitars website, or from the vastness of the internet. There is no evidence these old videos were used as commercials, or to sell or to market, or as part of a campaign or pitch to "palm off" the DFH reissued models as something produced by the luthier Buddy Blaze. That Buddy Blaze is connected to the original DFH is most clearly touted by Plaintiff's own website.

The Court therefore concludes that none of Plaintiff's claims can proceed to trial. In the absence of liability, Plaintiff's request for injunctive relief falls short. *See GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015) (citation omitted) ("[I]t is well-established that injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a finding of liability of a claim.").

## CONCLUSION

The Court **GRANTS** Defendants' motions for summary judgment. Dkts. 129, 161. The remaining motions are denied as moot. The Clerk is directed to enter judgment in favor of Defendants and close the case.


**DONE AND ORDERED** at Tampa, Florida, on November 30, 2018.


WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE


**COPIES FURNISHED TO:**
Counsel of Record